The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Please be seated. Ms. Dixon. Good morning, Your Honors, and may it please the Court, Courtney Dixon for the government. The limited age-based commercial sales restrictions at issue here comport with the principles underlying our nation's regulatory tradition. For as long as legislatures have explicitly codified age-based restrictions on firearms, they have drawn the line at age 21. That reflects an enduring judgment that stretches back to the founding era and continues to modern times. The district court's contrary conclusions in these cases misunderstood the historical record and the Supreme Court's methodology in Second Amendment cases and should be reversed. Are you talking at that, on the point you're making now, counsel, are you looking at that at Bruin Step 1 or Bruin Step 2? Even with respect to Step 1, which I guess is the text inquiry, the Supreme Court has said that that's informed by history. I think the same evidence would be relevant to both steps of the inquiry, and I think you'd get to the same place either way, Your Honor. Even if this Court wants to look at the kind of most narrow way to rule, which it would say that just this is consistent with the principles that underlie our regulatory tradition, this is an easy case. As we note, from the founding era, the founding generation understood individuals in this age group to be infants. That was based on a judgment about a lack of maturity, a lack of full judgment that these young adults have. At the time of the founding, a range of rights were restricted on the basis of age, and the founders drew the line at age 21. As we move into the 19th century, as law and technology changed, and legislatures for the first time set pen to paper on explicitly codifying age-based restrictions, they did something remarkably similar to what Congress did here in 1968. They restricted the sale of handguns to under 21-year-olds. Can we just ... You mentioned sale. Let's assume that I think this question matters. What does this law forbid, and who does it forbid from doing it? The law is directed to federal firearms licensees, and it restricts the sale of handguns. Let me ask you this. We all agree that it's not unlawful for a 20-year-old to possess a handgun, right? Under federal law, Your Honor. Under federal, sorry. States might have different laws. Preface it by everything I'm saying is under federal law. It is not illegal for a 20-year-old to possess a handgun. If a 20-year-old, if an otherwise qualified 20-year-old were to walk into an FFL and somehow managed to purchase a firearm from that FFL, would the 20-year-old have committed a crime? I believe, Your Honor, under federal law that you have to submit a sworn statement. No, assume they don't lie. Assume that there's nothing on the ... I understand that. Once they fill out a government form and they lie in that government form, they've probably violated 1001. Assume they commit no other crime in the course of doing so. If there's a form that asks for your age, they truthfully list their age, and the FFL sells it to them. Has the minor committed a crime? I mean, under Your Honor's hypothetical, as you noted, it's not illegal under federal law to possess a handgun. Off the top of my head, I'm not certain, and certainly there's no allegation here that the plaintiffs themselves have been kind of threatened with any criminal  Again, I understand there's like 1001 and there's other statutes that the minor might have violated, but what this law forbids is an FFL from selling a firearm, a handgun, to an 18, 19, or 20-year-old, correct? That's my understanding, Your Honor, in that if you look back at the 19th century laws, those were also prohibited sales. Some of them went broader and prohibited even giving or lending a handgun to a minor, but these do reflect the historical tradition of a restriction of sale, handguns to the same age group, and they're based on a similar why justification as well. The laws in the 19th century were enacted to prohibit. So there's a, let me, to follow up on Judge Hyden's question, is it your view that the only way you infringe on the right to keep and bear arms is to criminalize that? In other words, can you, can an infringement occur with legislation like this that directly impacts the ability to acquire weapons to a group, even if it doesn't criminalize them possessing it? All right. Is your, are you asking about as a kind of, is this implicated by the text of the amendment, or whether it's- I'm asking you just a direct question. As I under, in following up on whether the, what this law criminalizes, you just were discussing that with Judge Hyden's. I think I understand the issue there, and I think it's right that this law doesn't criminalize a 18 to 20 year old possessing a gun, even to have received a gun from a licensed dealer, so long as they don't commit another crime. My question, though, is even if that's true, can a law infringe on the right to bear arms, even if it doesn't criminalize the 18 to 20 year old's conduct? I mean, I think the question at the end of the day would be whether the law comports with our regulatory tradition. Okay. All right. So, what's the regulatory tradition at founding that prohibited 18 to 20 year olds from possessing firearms? So, I think if you look at the founding, there are principles. As I noted, we have the understanding that at the founding, these individuals were considered to be minors. Could you just, I'm sorry, I want you to give me your, I think your answer is, if there's one that relates to the, that prohibits sales or prohibits possession by 18 to 20 year olds at founding, will you answer that? And then, if there's not any, and you say that's consistent with principles, I completely get that point, but I just wanted to get the first step before you go to the second. Certainly, and maybe you'll get to the heart of, I think, this issue. As far as the parties have presented in this case, no side has identified an explicitly codified age-based firearms restriction at the time of the founding. We know from Rahimi that that is not- And just to be clear, that's not no age-based restrictions on 18 to 21 year olds. No age-based restrictions on anybody, right? Anybody. Five year olds. Exactly. There is no law saying that a five year old cannot purchase a gun. Obviously, plaintiffs themselves recognize that it would be absurd to say that legislatures today are prohibited from possessing a firearm. Rahimi tells us we look at principles, and I think Justice Barrett's concurrence in Rahimi in particular is compelling on this point. She explains why it's not the correct historical analysis to just do some kind of rote archival search and say, is there an exact law codified at the time of the founding that addresses this? Yeah. And she certainly made some interesting arguments about whether a prohibition necessarily equates with an understanding of the power. I mean, I get a lot of that, but we're trying to make sense of the Supreme Court law. Bruin tells us a process. Rahimi modifies it and lets us do principles. It sounds like the principle you are suggesting would apply is the principle that at founding, there were certain things 18 to 20 year olds couldn't do that people 21 and older could do. Is that your principle? I think that's part of it, Your Honor. I would say, you know, again, taking a wider lens, and that is what Rahimi tells us to do, Justice Barrett, Your Honor, as you noted, since there's not this use or lose of legislative authority. We also see from the founding this understanding shared by the framers, that individuals under the age of 21 generally lacked full judgment that a more mature adult would have. And on that basis, that is why, you know, under the court of law— I thought that was a big part of your argument, that what Judge Quattlebaum had said, which is that age restrictions were common at the time of the founding. Yes, Your Honor. And I'm saying more so, not only that were the age restrictions, but why it was because of this judgment. That judgment is reflected— But I also want to get back to make sure that I understand this. As I understand this, the law is directly only at handguns. The federal law, yes. It doesn't forbid the sale of a shotgun or a long rifle or whatever. So if an 18 to 20 year old enjoys hunting, there's no difficulty with getting a hunting rifle. That's correct, Your Honor, under federal law. But you don't shoot deer with a handgun. And it doesn't even—it's a fairly narrow law. It doesn't even forbid an 18 year old from possessing a handgun, as I understand it. Yes, Your Honor, and I agree that it's a narrow law. So the only thing that is forbidden, as I see it, is from—and the concern that Congress had was someone just walking into a dealer, making—purchasing a handgun and then walking out and working out a rage or visiting retribution. I mean, it's aimed at a particular ill, which is a spur of the moment—it's a prophylactic statute in that sense. And what it's concerned about is somebody coming in, making a purchase, and going out and then working out a motive of it. It seems to me it's safeguarding against impulse when it lets you possess one over a period of time, but just addresses itself purely to the sale. I do think that that is part of what Congress was getting at. Congress had particular evidence before it in the legislative record that handguns used by this age group were disproportionately involved in serious violent crime, and the evidence showed that those handguns were being put into the hands of these young adults by federally licensed firearms dealers, and Congress responded to that exact problem. But so does that—okay, so there seemed to be at this point—assuming we're getting into Berwyn-type scrutiny and assuming we're getting into the general principles so far, it seems to be—I mean, I assume you've read our opinion in Hunt. So, like, there's sort of two main—which, after all, just follows an Eighth Circuit opinion—since there seem to be two main schools of thought at the time of the founding of why you could disarm people, right? One is sort of forfeiture by wrongdoing, what I'll broadly call, and another is dangerousness, which is like Rahimi, right? So is this—the things you're just saying about young people, is that—well, it presumably can't be forfeiture by wrongdoing because it's not clear that being a minor is wrongdoing. So is it dangerousness, or is it a category other than dangerousness? I would say a couple of things to that, Your Honor. First, again, we're looking at the principles that underlie our regulatory tradition. There is a long regulatory tradition in this country of, you know, age-based restrictions. It's common ground here. We can enact some age-based restrictions on firearms. The dispute seems to be, in Plaintiff's view, either, I think, 18 or 21. Well, so this gets me—so then, okay, there's a long tradition of age-based restrictions, but I guess what I get from all the briefing is the tradition of age-based restrictions seem to vary dramatically both over time and restrictions on what we're talking about here. What was the age to contract at common law? 21, Your Honor. And what would you consider a law that says you can't sell someone to be a restriction on? Doesn't that sound like a restriction on contracting? It very much might have prohibited minors from—I mean, if you can't enter into certain kind of contracts, there might have been purchases that you couldn't make, and many of these reasons might be why we don't see explicitly codified these kind of things at the time of the felony. The important point here, I think, is that where age restrictions are concerned, Congress is not forbidden from acting prophylactically. Any age restriction, whether it be on marriage or a driver's license or whatever, is going to be a classification that is going to take in some people who would be perfectly responsible drivers or be able to form perfectly responsible marriage unions. But the—Congress acts prophylactically, and it says because of the we can act prophylactically on the basis of that. And there's nothing in the Constitution, as I see it, that prohibits that utilization of age restrictions. I think the founders would be astonished to learn that. And I don't understand where we can cut the age restrictions off. I mean, what if you had, you know, saying 14 through 17-year-olds cannot purchase a handgun? I mean, is that unconstitutional? I mean, there are bound to be some—you know, we give driver's license to people 14 to 17-year-olds. Do we reason by analogy to say, oh, because you've given a driver's license to so-and-so, you've got to give them the right to the handgun? I mean, I don't understand the limiting principle to this if we start going after age restrictions, which are commonplace in our law. I mean, they're a common feature of American law, and they always have been. I mean, I agree with that, Your Honor. I also agree that I think the plaintiff's argument does struggle from limiting principles. I think they offer a kind of fluid and ahistorical view of the Second Amendment. I take much of their argument to be that because 18-year-olds are adults for many purposes today, they must—you know, this age restriction, Congress lacks the authority to impose this age-based restriction. But, of course, the Constitution does not set one size fits all age of majority. Twenty-one remains the age for many things that we consider risky today. And even, you know, 21 is not the universal age of majority in all  We say Mississippi continues to retain a general age of majority of 21. It's also only recently that the age of majority has generally dropped from 21 to 18. At the time that this law was enacted in 1968, the voting age was still 21, and the general age of majority was generally 21 in all states. I see my time has expired unless the court has any questions. I'll save my remaining remarks for rebuttal. Thank you, Your Honor. Thank you. Mr. Harding, we're happy to hear from you, sir. Good morning, Your Honors. Elliot Harding on behalf of the four named young men and a large class, a nationwide class of individuals similarly situated, but for the laws at issue, these adults are otherwise qualified to be able to purchase these firearms. Mr. Harding, I think you already answered this question, but this is literally a factual question. Yours is the case where there's the class certification issue, too? Yes, Your Honor. Thank you. I just wanted to make sure. I will address that. No, no. I just wanted to make sure I knew which case we're talking about. I'd rather start back in the Second Amendment. The court had a lot of very good questions for opposing counsel. I'm just going to start off with the Bruin process, the Bruin declared process by which we start our assessment. One is, does the plain text of the Second Amendment cover the conduct at issue here? Our position is that keeping and bearing arms are two different things. The court noted possession. They can possess it. We're not here on a bearing case. We're here on a keeping case. In order to keep something, it inherently requires, and the founders would understand it to require, having and receiving. Receiving, as the lower court noted in its opinion . . . You talk about the text, and I understand the argument, but the text is, of course, qualified by the Militia Clause, among other things. The text of the First Amendment, the First Amendment speaks in more absolute terms even in the Second Amendment. The First Amendment says, no law shall infringe upon freedom of speech. But the absolute expression in the First Amendment has never been thought to invalidate defamation suits or the like, and it's not been thought to invalidate time, place, and manner restrictions. In other words, the most absolute provision in our Constitution has never been read by any court, and that's the First Amendment, to be absolute in its terms. And yet, it seems to me, what you're pushing on us is an absolutist interpretation of this, and I don't see the Supreme Court, whose decisions we try to follow very conscientiously, and I don't see that they have endorsed an absolutist interpretation. And in fact, I recall reading Heller and Bruin and McDonnell, they say, quote, laws imposing conditions. They said, what we say should not be taken to cast doubt upon, quote, laws imposing conditions and qualifications on the commercial sale of arms. So, that's the language from the Supreme Court, and I don't know what, I mean, we're a Fourth Circuit Court of Appeals, we're not a Fourth Circuit Supreme Court, and I don't understand how we can just overturn that language in those Supreme Court cases. Well, Your Honor, you raise several different points there, I'm going to try to hit them quickly. One, I'm glad you mentioned the First Amendment, compared to the Second Amendment. The Second Amendment also has a shall not language, shall not be infringed, so it does speak in the similar declarative statements, but I'm not making an absolutist argument here. I understand the idea of qualifications and conditions, but this isn't a qualification or condition case. There's no qualification that my clients can have to enter the public market and get a commercial sale, or purchase a new handgun and ammunition. Well, that suggests that your clients want to become an FFL, that's not what they want, right? No, they want to be able to purchase a new handgun and ammunition, they cannot do it. From an FFL? No. That's not a federal law. No, new handguns, unowned, previously unowned, can only be sold through FFLs. You can't go into the back trunk in the street and go buy a new handgun, it's previously owned. There's nothing there to be... And they can't enter the market. One who's engaged in a private transaction, by definition, is not a commercial dealer. So what they've been relegated out of, and banned from participating in, is the market. But how do you deal with the wealth of historical material? I mean, this is one of the things... It seemed to me you were very embarrassed about the 19th century, and you wanted to sort of overlook the fact that age restrictions were so common during the 19th century. Oh, let's skip the 19th century, but even if... And then, also, how do you look, even more pertinently, how do you overlook the wealth of historical material that indicated at the founding age restrictions were common? They may not have always been 18 to 20. It might be that the age restriction was at 21 or whatever, but the principle would not vary, which is, well, is there something in the Second Amendment that is somehow prohibitory of a very common legislative device? Your Honor, we didn't skip over any 19th century, meaning the 1800s, or 18th century laws. There weren't any. It seems to me we're all alight on the 19th century. Well, that's because they didn't come into existence until the 1850s. Doesn't the Supreme Court guide us, particularly for a federal regulation, to the 1700s? Certainly, that's not been conclusively ruled out, but that's the first place to start, right? In 1792, the Federal Militia Act was passed, and every colony or state thereafter passed their own state requirements. These young people had to bring and foster their own firearms at that time. Counsel, if I could touch off, Judge Wilkinson makes some good points about our need to follow the Supreme Court, and he alluded to some, I think, probably realities that anyone, like myself, who's had parents of people 18 to 20, might question their maturity versus others. So, as a matter of policy, we can have a whole lot of views on this thing. But doesn't Bruin give us the way we determine the limiting principles of the Second Amendment? I mean, the First Amendment, there are similarities as you talk about, but the case law on the limitations like time, place, and manner, and defamation and things are there. But why aren't we required to use Bruin's test to look to founding era times as our limiting principle? I thought that's what we have to do. You are, Your Honor. You are bound by that. But that's a pretty important concession. So do you agree that, okay, it feels like we're either going to use 1792 or we're not going to use 1792. And if we're going to use 1792, then isn't it irrelevant that the age of majority today is 18? No, Your Honor. In fact, the government, in their starting point, they said in 1856, Alabama passed the first age restriction. They cited 21 years old. Alabama, that law, actually said minors. And that's the issue here. Is there a difference between childhood and adulthood? Roper v. Simmons, the Supreme Court said that society recognizes the difference between childhood and adulthood at 18. That was in 2005. Right. But why does that matter? I guess I'm being guided by now Justice Kavanaugh's opinion on the D.C. Circuit. He said, that may be true, but a history and tradition test is a history and tradition test, not a history and tradition test, though then we supplement it by things that happen later, like lowering the age of majority to 18. I guess let me ask you another question. In your view, why was the 26th Amendment necessary? Because once Congress set the national voting age at 18, and once we let 18-year-olds get married, and once we let all kinds of other things happen at 18, why could states prohibit voting by people under 21? Why was the 26th Amendment necessary? Well, it was necessary because of the Vietnam War and the amount of people that were getting married. No, that was why it was politically necessary. I'm saying that under your theory, that as the definition of minors for various private law purposes changes, the Constitution changes, and if that's true, the 26th Amendment was unnecessary because 18-year-olds had a constitutional right to vote before the 26th Amendment was ratified. Why did we need the 26th Amendment in your view? It guaranteed... Well, Oregon against Mitchell, I believe, was a state-based case where the states were able to prohibit it. Let me ask you another question. I'll put it this way. Your argument that it has to be 18 because we use 18 for... I mean, you have two strands of your argument. You have what I'll call the time-of-the-founding militia argument, which I'm putting aside now. I'm talking about the strand of your argument that says today the age of majority is 18 for most purposes. To answer that question, if I could briefly, the people is who the Second Amendment applies to. There's a lot of presumptions that go into that, but at a minimum, we recognize that as those who are participating in civic society as adult American citizens. At a minimum, that's who the Second Amendment applies to, and due to the changes of the threshold between adulthood and childhood... This is a bizarre way to do a history and tradition-based analysis, but I have one other question on the 26th Amendment. If your argument that the age of majority today is 18 in part because of the 26th Amendment... So as a result of the 26th Amendment, a state can't forbid an 18-year-old from voting, and that forms part of your argument. You can't forbid an 18-year-old from voting. You can't prohibit him from having a firearm, which is superficially attractive. I get that, but this law was passed in 1968, and the 26th Amendment was ratified in 1971. Doesn't that suggest that this law was constitutional from 1968 to 1971 and then became unconstitutional in 1971? If the court is limiting the scope to the difference between adulthood and minority, yes, but we also... Doesn't any line of argument that suggests this law was constitutional and enacted but then became unconstitutional three years later suggest that something's gone deeply wrong with the analysis? No, because we also think that at the end of the day the true difference isn't necessarily the adulthood-minority status. We're saying that that's a floor, but generally speaking, from a nominal age standpoint, at the founding, these were the exact class of people that the founders expected, if not demanded, to be able to have access to firearms. So we're not limiting it to that argument, but should the court be confined to the adulthood aspect, we definitely think that they're cloaked and protected as the people with the Second Amendment after 1971. But wait, aren't 12-year-olds part of the people? I don't understand the people argument. As far as I can tell, 12-year-olds are part of the people, too. The founders would not have expected them to... There's nothing to point to, to expect a 12-year-old to be cloaked with the Second Amendment? No, but you framed it as whether they're part of the people, and I would assume that the founders would have thought that 12-year-olds were part of the people. Well, as they did in the First Amendment, in the Fourth Amendment, in the Eighth Amendment, they're protected by all the amendments, but I don't have standing to argue for 12-year-olds today. If that doesn't work, I'm saying you're making an argument that works pretty well, but... So let's go to your militia argument. I don't understand how we could adopt your militia argument without saying 17-year-olds have... I know you say, that's not this case, we're not arguing that, and with all respect to the Hirschfeld panel, there's like whatever, we're not going to talk about 17-year-olds, but the logical implication of your militia argument is that 16- and 17-year-olds have that right too, and as much as you try to avoid that, it just seems like your militia argument... I don't know how I accept your militia argument without concluding 16- and 17-year-olds also have a right to purchase firearms. That's the argument the court adopts, it's probably right, but again, that would be beyond the scope of the case, and it doesn't have to be decided that way, but I'll also note every other amendment has been applied to 16- and 17-year-olds as well. There's nothing that says that the 2nd Amendment just doesn't apply to this class of adult American law-abiding citizens. Same with the 1st, 4th, 5th, 6th, 8th, 14th, all apply. And with that, Your Honors, I appreciate the extra time. Thank you. Thank you. We were asked to invalidate a federal statute here, and that ought to be a rare kind of occurrence. It seems to me that when we go and we simply invalidate a federal statute, we should be very sure of the ground on which we walk. Justice Barrett's opinion in the Rahimi case says you consult history broadly, not narrowly. And she says when you consult history, you are looking for a principle, not a historical twim. Much of your argument is a twinning argument, rather than, as Justice Barrett says, a search for a principle. And the principle of age restrictions, which is the critical principle here, was hardly unknown to the founders, and we can go into this or that, but it was interesting to me that the quotations from two of the most important of our founding generation. When John Adams was saying individuals under that age should not vote because they lack judgment and will and are not fit to be trusted by the public, and Gouverneur Moritz says those under 21-year-olds want prudence and have no will of their own. And so this whole idea of impulsiveness on which this very narrow federal statute is predicated was not unknown to the founders. It defies belief to think that the views that Gouverneur Moritz and John Adams held were confined to them alone. The greater degree of impulsiveness of younger people is something with which legislatures have had to wrestle throughout history because it is simply a feature of human nature that was present at the founding generation and is present right here and now today. And I don't understand why this very modest restriction, which is way short of any kind of prohibition, why we would rule this very modest restriction in a federal statute that Congress considered and contemplated and reflected upon and say it's unconstitutional. That's pretty aggressive, isn't it, Counsel? Well, Your Honor, there's a lot there to respond to, but I'd like to start with the idea that we are making a historical twinning argument. I don't think that's accurate as to what we're doing here. I agree that Rahimi says we need to identify principles and I've got two for you. The first is adulthood. But you're looking for a twin. I am not looking for a twin, Your Honor. There is no single piece of evidence in any period of history that the government has submitted here that restricts the rights in any way of legal adults to keep and bear arms. This law is unique. Can I hear your second? I have a question about the first, but I want to hear your second before I ask the question about the first. The second is that the founding generation, despite those statements about their impulsivity in voting, that same group of people made 18-year-olds the militia. They required them to be armed. That was a judgment on behalf of the founding generation that 18 was the age at which a person became able to bear arms. Those are my two principles. Go ahead. The law we are actually looking at here is not a restriction on possession. It's not a restriction on ownership. It's not even a prohibition on the miner to buy. It's a prohibition on the merchant to sell. What do we call it in fall semester 1L of law school when person X says, I would like a thing, and person Y says, I will give you that thing in exchange for some money, and they say, I don't have it here, but I'll have it next week, and next week when I come back, you'll give me the thing. What do we call that? I think the word you're looking for is contract. Why isn't the relevant question or at least a relevant principle whether it was lawful to enter into binding contracts with miners at the founding? There's nothing in the founding that would have kept a 21-year-old or an 18-year-old who had money from buying a firearm. But what there was a law was saying any merchant who purported to try to enforce a contract with a miner would not have been able to do so, right? Sure, but if I had money and you had a firearm and I wanted to buy it from you, I gave you the money, you gave me the firearm, there was no law against that. And I would also add that on the point of contracting, there was an exception for necessaries. And here, federal law required these people to go out and obtain a firearm. So I think you'd be hard-pressed to say... Well, it required them to supply a firearm. It seems the historical evidence is the assumptions their parents would supply for them. Well, there were a couple of states where the parents were the ones who were punished if the person failed to show up with a firearm, but it was the person themselves who was required to obtain a firearm. And so what we have instead, then, is a judgment by the founders that 18-year-olds were able to bear arms... Now I've got a question about your first principle that I asked your friend on the other side. Why doesn't your argument suggest the same is true of 17... I know, you're both very conspicuously, desperately trying to avoid the fact that the implications of your argument about the militia is that 16s and 17-year-olds also can. But you do not want to say that. You can't just say, that's not this case. One of us has to write an opinion explaining the outcome of this case. And it seems to me that at least on the militia theory, the theory that you would have us adopt ineluctably leads to the conclusion that 16 and 17-year-olds also have a right to do this. And I think the reason you don't want to say that is because you think that would strike us as self-evidently bananas. No, Your Honor. I don't think that it ineluctably leads to 16-year-olds having... Why not? 16 and 17-year-olds were in the militia in many states too. Prior to the founding, yes. At 1791, we have the Second Amendment Act. In 1792 is the Federal Militia Act, where there was a debate and they considered 16 as an age. And they decided, George Washington wrote a letter to Hamilton saying that he thought that 18 was the proper age. Henry Knox wrote a letter saying that 16 was too tender of an age for this sort of thing. And they decided on 18. And then after that, you see every single state fall in line almost immediately. Just to make sure I understand. But that's after the Second Amendment is ratified, right? Sure. It's a year after. Just doctrinally, the way we would say that is, things that happen very close to the founding, even if slightly after, are indirect evidence of the original public meaning of the documents. Correct. But what you're telling me is that they had a big debate about this after the Second Amendment was written. How can that liquidate the meaning of the Second Amendment as ratified if right after the Second Amendment was adopted, people had a big old debate about that actual question? I think at the time, who was in the militia was an unsettled question. They settled it shortly thereafter, in 1792. I think that this is the ordinary application of post-ratification history by the founding generation. I mean, as close in time, I think, as you can get for post-ratification history. I'm just trying to follow Heller and Bruin and McDonnell. I can't just wish away the Supreme Court's language when they said explicitly. And the Supreme Court, in opinion after opinion after opinion, has backed away from an absolutist interpretation. And lately, it seems to me that it is pursuing a somewhat more pragmatic and flexible approach. In Rahimi and some of the denials of cert and the rest, it seems to me that the Court has, if indeed it ever did adopt an absolutist approach, is backing gently away in a more practical direction. And what are we to do with language that says explicitly in the Supreme Court's opinion that nothing should be taken to cast doubt upon laws imposing conditions and qualifications on the commercial sale of law, of arms? How can we just ignore the Supreme Court's terminology? I mean, that's got to count for something. I don't think this is a condition or qualification on the commercial sale of arms. I think this Court got it right in Hirschfeld when it said that a condition or qualification on the commercial sale of arms is a hoop to jump. This is clearly a condition and qualification on the commercial sale of arms. In this Court's case, Hossford, before Bruin, it discussed the obligation to become a federally licensed firearm dealer to sell. I'm out of time. In Hossford, this Court specifically contrasted the requirement to become an FFL with another law that could be phrased like a condition or qualification on the commercial sale of arms but actually operates as a ban. You cited the panel opinion. Totally fair. So Hirschfeld rather, I will say, breezily just concludes this is not a commercial sale restriction. Do you know of any other Court that said that? I believe the District Court in Reese said that. I think this is the only one. Yeah, I think Hirschfeld is the only Court of Appeals that's made that analytical move, right? Yes, but Your Honor, I think it's alone, but I don't know of anything. And there are other ones that have refused to make the analytical move. I'm aware of the Tenth Circuit that has gone the other way, but I think the Tenth Circuit is the only one I'm aware of that's gone the other way. But I think the problem with the Tenth Circuit, to you, if I could just respond briefly, is that it proves too much. If any time that Congress passes a law saying you have to be 21 to buy a firearm, that's just a condition or qualification on commercial sale of arms, why couldn't they have set the law at 50? And I think if they did, it would be evident to everybody you still have to do the Bruin analysis to determine whether that particular condition or qualification. That's true. We always have to do the Bruin analysis, but what I worry about is that we're going down a path beyond the Supreme Court and a path that spells the death of legislatures. Because the legislature struck a careful balance here. It's a very measured law. They talked about the dangers. They talked about the right. And it cannot be that these opinions signal a death of legislative authority. Legislatures still have a role in our Republic with this issue, as with so many others. I think the Supreme Court has recognized that that it cannot take out and if we invalidate this law, which is not draconian in any way, shape or form as my colleagues have pointed out it's a very limited restriction. I just worry that we will negate the whole place of legislative authority in this dialogue. And that can't be right, can it? Your Honor, I don't think that there's no place for legislative authority with respect to Second Amendment cases. But I think that we have to recognize that the Supreme Court has said repeatedly now that that authority is circumscribed by history. And our argument here is that historically speaking there has never been a law that restricts the right of legal adults to purchase firearms. Well, hold on. But at the time of the founding there were no laws that restricted the ability of anybody to possess firearms, right? Correct. So again, why does that logic not lead to the conclusion that 14-year-olds have a constitutional right to purchase firearms? Again, Your Honor, I go back to the principle I think that underlies the Militia Act and the State Militia Acts that follow it, which is that the founders... I know, but to the extent, I mean, look, under the Bruin analysis, it's a point that sounds really good for you under the Bruin analysis. There were no age-based restrictions at the founding. But you keep today adding the words, on legal adults. But at the time of the founding, there were none on anybody, right? Correct. There were none on legal adults at any point in American history prior to... So now you're using the 1850s when it benefits you while urging us to ignore the 1850s when it hurts you. As I said to your colleague, we're either doing 1791 and only 1791 or only 1791. But you like 1791 in the sense, for all the reasons we've said, but you really hate 1791 because if we only do 1791 it suggests no age-based restrictions regardless of age because at the time of the founding, there were no age-based restrictions regardless of age. I disagree with that, Your Honor. I think that if we look at 1791 again, there's a question... My colleague mentioned... Would it have been a crime to sell a 12-year-old a firearm at the time of the founding? I don't believe so. But that doesn't mean that the 12-year-old at the time of the founding had a fundamental right to purchase the firearm. Perhaps because he had no right to contract. I don't think that we can tie it to contract for the reasons I previously stated. Your Honor, this is a group that had to obtain firearms. So the principle of this case is that legislatures cannot take account of youth? No, Your Honor. Again... Oh, yes. But Judge Heitens is pointing out to you that there's no limiting principle with respect to 16- to 18-year-olds. Your Honor, I think, as I stated, we've offered two limiting principles. The first is adulthood. And that's if the court decides to take account of 1868. As Judge Heitens points out, though, we prefer focusing simply on 1791. Even if you've looked just at 1791. The principle here is that legislatures cannot take account of youth. And yet, you know... Really, youth was a human characteristic. It was an element of human nature in the 1790s. And there's nothing to suggest, as I can see it, that there was a prohibition on the part... Some sort of prohibition on the ability of the legislative branches to take into account the particular and distinctive characteristics of youth. The nice thing about youth is it's not a... Maybe one of the unfortunate things about youth is it's not an immutable characteristic. I can't tell you how much I wish youth were an immutable characteristic. And that I could be a part of some suspect class. But it doesn't work that way. These are things that are not draconian because these folks that you're saying suffer this deprivation. Wait a year? Many cases wait six months. They'll be out from under the law. They can buy handguns to their heart's content. In other words, when you look at this kind of age restriction, all of these plaintiffs are going to pass through it. And they say, oh, we deserve it here and now. But I think the last case, it was before the court on this note, it was mooted out because the particular plaintiffs were eligible. I don't know what the ages of these good folks who are the plaintiffs here, but in six months or a year, you can throw a nice birthday party, okay? Because then they'll be eligible to get a handgun. But the constitutional principle can't be, well, no, I have a right to a handgun right this minute. Tell them to go hunting with their rifle. They got plenty of right to do that. May I respond? Of course you can respond. It is draconian for the people in that age group. You're right, it goes away when they turn 21. But they're legal adults now with legal adult self-defense needs. To a person who needs to defend themselves with a firearm, it's no good to tell them, I'll buy one in a year. That is hollow comfort to them. I see that my time is up. Hold on a minute. No, I'm fine. Thank you. All right, counsel, you've got some rebuttal time here. Counsel, can I hijack you before you get to your points? I'm sorry about that. But I just want to get straight on a couple of principles. We had, I think, a discussion that allowed me to understand where you are on the historical tradition. Your point there is that there's a history of age limitations not necessarily on firearms. And you think that's sufficient under the Rahimi principle context. I get that point. Do you There's also the point that Judge Wilkinson has talked about several times with your colleagues about, I guess it started in Heller, the presumptively constitutional categories like conditions of sale, regulation of dangerous people, I can't remember all of them off the top of my head. But that issue there, if we look at another one of those categories, I guess, or does Bruin's footnote 8 inform us a little bit on that? Because that seems to be talking about another one of those presumptively valid concepts. I know we're not talking about that issue. Just clarifying the footnote that you're referring to. We spent a lot of time with the Second Amendment over the last year, so I shouldn't be so quick to cite footnotes. But as the Court explained it there, they cite those presumptively constitutional regimes and then they go on to add that the nature of those regimes, even if what we're talking about here is the condition of sale, can infringe enough that they become unconstitutional. I guess the point here is it is true that this regulation doesn't apply once you get to be 21, but I think it would be hard to say it doesn't have a significant impact on 18- to 20-year-olds' ability to have a handgun. Saying that as a parent, I want to jump up in many ways and say, yes, yes, that makes a lot of sense. But I've got to deal with Bruin, and I don't know how I do that. When you've taken away effectively the ability of a group of people, if you assume they're covered by the Second Amendment, how are we not in a land that Bruin doesn't let us go? I think there's a couple of things to unpack there, Your Honor. First, with respect to the language about conditions and qualifications on the commercial sale of arms, I think you've seen in this Court's opinions recently and other Courts of Appeals, the Courts have wrestled with where that fits in an analysis, how exactly it is used. Look, I think here it's further confirmation of what the history shows. If the Court doesn't think that it's necessarily persuasive here, again, the history strongly supports this law. I'll also note that in Bruin, Justice Alito, in his separate concurring opinion, he specifically notes that the opinion doesn't cast doubt on the law with respect to 21-year-olds and handguns, exactly this law at issue. If we try to interpret all the concurring opinions in Second Amendment Supreme Court cases, we'd be completely tied up, wouldn't we? I would agree with that, Your Honor. You had asked a question about the Bruin analysis and the Founding Era. We are not disputing here. This Court absolutely should look at the Founding Era evidence. We think it supports us. I think what we do dispute is that, for all the reasons we explained earlier, Justice Barrett's concurrence emphasizes and Rahimi makes clear we don't need this explicitly codified historical twin in the record. I also dispute that the Court just needs to simply set aside the wealth of evidence in the 19th century. Justice Kavanaugh's concurrence in Rahimi expands upon. The Court has looked at that kind of evidence in dozens of cases. He explains why it's relevant to understanding the public understanding of the right. This is how it was understood and applied and interpreted by legislatures in the decades after its ratification. This is a sincere question because sitting here I can't remember. When did handguns first become broadly available? I don't know if I have a specific date, Your Honor. This Court's recent on Bonk and Bianchi. But it's after the Founding, right? Right, Your Honor. I think handguns are around in the Founding. I think they're generally less effective. They've become more effective into the 19th century and we see legislatures respond. I think that's another reason why it's wrong to just simply write off 19th century legislatures. Here we have a wealth of jurisdictions across the country from Alabama to Maryland to Wyoming enacting these kind of restrictions. Plaintiffs note that some of them referred to minors. Muskets were the big deal in the days of the militias. Not handguns. Yes, Your Honor. I think that goes to another point that I was going to make which is plaintiffs' reliance on Founding-era militia laws. The fact that someone can be trusted to carry a musket in the supervised context of militia service does not mean that they can individually purchase a firearm, a handgun outside of that context and outside of their parent's supervision. The militia laws themselves underscore this tradition of parental supervision. I don't think that's the point of your colleagues. I don't think the point is because they used arms in their capacity of participating in the militia. That's the issue. The issue is those militia laws presume that they owned and possessed them at the time. I think, as I understood their connection not that this is what they're doing once they become participants in the militia is that those laws indicate whether that was good or bad, whether they had enough judgment at the time to do it that at that time they had the right to keep and bear arms and I think that's the point of those acts. Well, we cite a number of laws at the time of the founding that understood that parents would supply the arms for individuals in the militia. Sure. They were obligated to and the information on that is primarily it was a financial thing and so you have a different why to use the test we've been given. I mean, I don't know if there's historical evidence that it was a purely financial matter, Your Honor I think it demonstrates, again, that at the founding these individuals were infants in the eyes of the law there is a tradition of parental supervision over this age group and all that Congress was attempting to do in this law was to empower parents to supervise the purchase of handguns by this age group. Say at the time of the founding a merchant sold an 18-year-old a musket do you think it's possible that that 18-year-old let's be real, it's the founding, so it's probably the father would show up at the merchant and say, what in the world did you just do selling my idiot 18-year-old child a musket? He asked me for a musket, I wouldn't give it to him why did you sell my minor child a firearm without my permission? I mean, I think that's very possible, Your Honor And would that father have a leg to stand on at the time of the founding? Like, I can't believe you sold something to my 18-year-old child that I didn't authorize him to buy? The 18-year-old at the time would have been a minor under the common law And could the father have taken the firearm out of his 18-year-old's hands and say, cool, congratulations, you just wasted some money because I'm going to take this from you because I'm your father and you live in my house? To the extent that they were minor under the common law, that could be very possible, Your Honor I think what Your Honor's question is getting at also goes to a lot of the themes we've been discussing today this fixation on there's no law at the time of the founding one that can't get everything here, given that it's common ground that there can be some age-based restriction Again, there might have been a lot of reasons why there was not an explicitly codified age-based limitation on handgun sales at the time of the founding We certainly see once legislatures, again, first put pen to paper they draw the same line that Congress drew here in 1968 Unless the Court has further questions, we ask that you reverse Thank you very much Thank you Thank you very much We'd like to thank both sides of this interesting case for your fine arguments We will adjourn court and we will come down and greet counsel
judges: J. Harvie Wilkinson III, A. Marvin Quattlebaum Jr., Toby J. Heytens